1
2
3
4
5                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
6                              AT SEATTLE
7
8    CHRISTINE E. REULE,                    Case No. C08-1591 MJP
9              Plaintiff,
10        v.                                ORDER GRANTING DEFENDANTS'
                                            MOTION TO DISMISS
11   THE H.O. SEIFFERT COMPANY
     DBA EDS EVERETT DOWNTOWN
12   STORAGE, PATRICK SIEVERS,
     DOES 1 THROUGH 10, DOE
13   AUCTION COMPANIES 1
     THROUGH 10, DOE AUCTION
14   CORPORATIONS 1 THROUGH 10,
     DOE COMPANIES 1 THROUGH 10.
15
              Defendants.
16

17        This matter comes before the Court on Defendants' motion to dismiss or alternatively

18   for summary judgment.  (Dkt. No. 16.)  The Court has reviewed the motion, the response

19   (Dkt. No. 25), the reply (Dkt. No. 41), and all other pertinent documents in the record.  For

20   the reasons set forth below, the Court GRANTS Defendants' motion to dismiss.  The Court

21
     need not address the motion for summary judgment.
22
                                   **Background**
23
24        Defendants own and operate Everett Downtown Storage in Everett, Washington.

25   (Dkt. No. 16 at 2.)  On December 27, 2002, Plaintiff signed two leases with Defendants for

     two storage units.  (Compl. § VI.)  The terms of the leases prohibit an individual from storing

property in the units that has an aggregate value of more than $5,000 and limit Defendants' responsibility for any loss to $5,000.  (Sievers Decl., Exs. B-C; Reule Decl. Ex. C.)  The leases specifically state that the storage units are not suitable for the storage of heirlooms or irreplaceable items having special or sentimental value to occupant.  (<u>Id</u>.)  Before June 2005, Plaintiff gave up one unit.  (Dkt. No. 16 at 3.)

Claiming that Plaintiff owed $585 in rent and late fees, Defendants sold the contents of Plaintiff's unit at public auction for $201.99.  (Dkt. No. 16 at 10.)  Plaintiff acknowledges that she was late on her September 2007 rent and attempted to pay her September and October 2007 payments with a single check in the amount of $255 in October 2007.  (Reule Decl. ¶ 5.)  It is undisputed that Defendants returned this check in an unopened envelope to Plaintiff.  (Dkt. No. 16 at 8-9.)  Plaintiff also claims that Defendants sent her fraudulent billing statements from October 2006 through September 2007.  (Reule Decl. ¶ 4.)  On November 13, 2008, Plaintiff filed a complaint alleging that the auction of the contents of the storage unit was a violation of the RICO Act, fraud and conversion, breach of contract, negligence, and violation of Washington's Consumer Protection Act.  (Compl.)

Defendants move to dismiss this case for lack of federal question jurisdiction because Plaintiff has not made allegations that would support a RICO claim and lack of diversity jurisdiction because Defendants' liability is limited to $5,000 pursuant to the exculpatory provisions contained in the rental agreement.  (Dkt. No. 16.)

<u>**Discussion**</u>

I.  <u>Federal Question Claims</u>

Defendants are entitled to a dismissal of Plaintiff's federal RICO claims pursuant to Fed. R. Civ. P. 12(b)(6).  To withstand a Rule 12(b)(6) challenge, Plaintiff's "factual allegations must be enough to raise a right of relief above the speculative level."  <u>Bell Atl.</u>

Corp. v. Twombly, 550 U.S. 544, 556 (2007). While a complaint does not need detailed factual allegations, Plaintiff's obligation to provide the grounds of her entitlement to relief requires more than conclusions and a formulaic recitation of the elements of a cause of action. Id. Plaintiff must plead "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556)).

To prevail on a RICO claim under 18 U.S.C. § 1962, Plaintiff must demonstrate "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." Sedima v. Imrex Co., 473 U.S. 479, 496 (1985).

First, Plaintiff's complaint fails to state a RICO claim because it does not allege facts giving rise to a criminal enterprise. A RICO claim requires that there be some structured entity which was the decision making body directing the alleged criminal enterprise. Baker v. IBP., Inc., 357 F.3d 685, 691-92 (7th Cir. 2004) ("Without a difference between the defendant and the "enterprise" there can be no violation of RICO.") (citations omitted); see also Rae v. Union Bank, 725 F.2d 478, 480-81 (9th Cir. 1984) (where a party "is the enterprise, it cannot also be the RICO defendant"). Plaintiff fails to allege any organization or structure independent of the regular business practices of Everett Downtown Storage and its employees as required under a RICO claim. (Compl. § IX; Dkt. No. 25 at 14-15.) In addition, a common purpose is an essential ingredient of an "enterprise" for the purposes of the RICO act. Plaintiff simply alleges an "enterprise" between Mr. Sievers, the purchaser, Ms. Estes, and the business entity with a "common purpose to defraud Plaintiff." (Compl. § IX; Dkt. No. 25 at 7.) The Court finds this allegation to be the type of "threadbare" repetition of the elements of a cause of action buttressed only by "conclusory statements" that is insufficient for the purposes for Rule 12(b)(6). Iqbal, 129 S. Ct. at 1949.

Second, Plaintiff's complaint fails to sufficiently plead two or more predicate criminal acts constituting "a pattern of racketeering activity" as required for a RICO claim. Sedima, 473 U.S. at 496. Plaintiff alleges a "pattern of racketeering activity" and claims violations of 18 U.S.C. §§ 891-894 (extortionate credit transactions) and 18 U.S.C. § 1341 (mail fraud) as the requisite criminal acts. (Compl. § IX.) However, nowhere does Plaintiff allege facts that would support the elements of these criminal acts. In addition, Plaintiff does not identify a specific misrepresentation of fact, made by a specific person, on which she reasonably relied to her detriment as required. See Holmes v Sec. Investor Prot. Corp., 503 U.S. 258, 268-269 (1992) (finding a RICO plaintiff must allege a direct causal link between his injury and the defendant's violation). Plaintiff simply recites, in conclusory terms, that Defendant committed fraud. (Compl. § IX; Dkt. No. 25, p. 7.) For similar reasons, the Court finds Plaintiff's non-specific references to "conspiracy," "theft," and "conversion" in her response inadequate to plead a predicate act. (Dkt. No. 25 at 8.) As the Supreme Court has stated, "the essence of a RICO violation is the commission of those criminal acts in connection with the conduct of an enterprise." Sedima, 473 U.S. at 497. Plaintiff's attempt to assert a RICO claim arising falls short of the requisite standard and Defendants' Rule 12 (b)(6) motion must be granted.

II.     State law claims

Defendants are entitled to a dismissal of Plaintiff's state law claims pursuant to Fed. R. Civ. P. 12(b)(1) because the claims, as alleged, do not the minimum requisite amount in controversy.[1] On a motion brought pursuant to Rule 12(b)(1), the court may dismiss based on the amount in controversy only if it appears "to a legal certainty" that the claim cannot reach

---

[1] Although Defendants fail to specify, the Court assumes the motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(1), which addresses the Court's subject matter jurisdiction. (Dkt. No. 16 at 13 (arguing the Court lacks subject matter jurisdiction).)

the jurisdictional minimum, and the party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims.  <u>Pachinger v. MGM Grand Hotel Las Vegas, Inc.</u>, 802 F.2d 362, 363-64 (9th Cir. 1986).  Plaintiff fails to allege an exact aggregate dollar amount of damages, though she argues that her beanie babies alone were worth $20,000, a dollhouse was worth $700, and other heirlooms and collectibles were worth "thousands."  (Compl. § IX; Dkt. No. 24 at 6.)  Plaintiff simply requests "damages described . . . and in full amount allowed by law."  (Compl. § XV.)

Plaintiff's complaint fails to allege facts that would entitle her $5,000,000 in emotional and mental stress and punitive damages.  (Compl. § XV.)  In the context of a claim for negligent or intentional infliction of emotional distress, mental anguish arising from property damage is deemed appropriate in Washington only where there is "some ill-will, animus, or desire to harm the plaintiff personally."  <u>Pickford v. Masion</u>, 124 Wn. App. 257, 262 (2004).  Plaintiff does not make this allegation.  (Compl. § XV).  Further, even if Plaintiff prevailed on a request for punitive damages, she has not pled actual damages that would entitle her to punitive damages in the amount of $5,000,000.  <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 425 (2003) (punitive damages are generally limited to single-digit ratios of actual damages to satisfy due process).  Similarly, Plaintiff's treble damage request under Washington's Consumer Protection Act is limited to $10,000.  RCW 19.86.090.  Emotional damages are not recoverable under the CPA.  <u>Id.</u>  It is Plaintiff's burden to plead the amount in controversy under Fed. R. Civ. P. 8(a) and Plaintiff has failed to meet that burden.

Even if Plaintiff had been more explicit in alleging damages, the Court finds the limited liability clause of the rental agreement is enforceable.  The amount in controversy is normally evaluated by examining the complaint, but when it appears "to a legal certainty that the claim is really for less than the jurisdictional amount" dismissal may be justified when the terms of a contract limit the Plaintiff's possible recovery.  <u>Pachinger v. MGM Grand Hotel,</u>

802 F.2d 362, 363-64 (9th Cir. 1986).  Plaintiff claims this limited liability clause is unenforceable due to unconscionability.  (Dkt. No. 25 at 9.)  Washington courts analyze a number of non-exclusive factors when determining unconscionability which include:

> (1) the conspicuousness of the clause in the agreement; (2) the presence or absence of negotiations regarding the clause; (3) the custom and usage of the trade; and (4) any policy developed between the parties during the course of dealing.

Puget Sound Fin., L.L.C. v. Unisearch, Inc., 146 Wn.2d 428, 439 (2002);  Schroeder v. Fageol Motors, Inc., 86 Wn.2d 256, 259-61 (1975) (abrogated on other grounds).[2]

First, the Court's analysis of conspicuousness asks "whether the important terms were hidden in a maze of fine print."  Id. at 260.  The rental agreement consists of a single sheet of paper with the liability disclaimer typed on the front of the document, a cartoon character in the margin calling further attention to it, and certain parts of the clause in boldface including the statement that "occupant further agrees not to store property with a total value in excess of $5,000 without the written permission of the Owner."  (Reule Decl., Ex. C.)  The clause is not hidden in a maze of fine print nor is it "inconspicuous."

The second consideration is the presence or absence of negotiations.  Schroeder, 86 Wn.2d at 262.   Both parties agree that the liability clause was not specifically bargained for.  However, the rental agreement invites the customer to negotiate with Defendants to circumvent the $5,000 limitation with written permission, and Plaintiff has not claimed to have made such a request.  (Reule Decl., Ex. C; Compl.)  In addition, evaluation of whether the parties had a "reasonable opportunity to understand the terms" of the clause will also be considered.  Schroeder, 86 Wn.2d at 260 (citations and internal quotations omitted).  Over the five years that the parties engaged in business together Plaintiff had "a reasonable opportunity

---

[2] The Court notes that Washington courts distinguish between "substantive unconscionability" and "procedural unconscionability."  Nelson v. McGoldrick, 127 Wn.2d 124, 131 (1995) (citing Schroeder).  Plaintiff's arguments appear to present a claim the contract was procedurally unconscionable.

to understand the terms of the clause, which remained unchanged throughout the course of dealing." Puget Sound Fin., 146 Wn.2d at 443.

Third, the Court considers the custom and usage of similar limited liability clauses in the trade. Schroeder, 86 Wn.2d at 260-61. Washington courts have recognized that a clause may be conscionable "regardless of the surrounding circumstances if the general commercial setting indicates a prior course of dealing or reasonable usage of trade as to the exclusionary clause." Puget Sound Fin. 146 Wn.2d at 441. Although Washington courts have not addressed this exact limitation of liability clause in a public storage facility, other courts have ruled that similar provisions in rental agreements which limited both the value of property stored and the operator's liability for any loss to $5,000 were valid and enforceable. For example, in Kocinec v. Public Storage, the court enforced an identical exculpatory clause in an agreement for the rental of storage space limiting the liability of a private owner of a self-storage facility after finding the clause clear and unequivocal. 489 F.Supp 2d 555, 559 (D. Va. 2007); see also Eddings v. Public Storage, 2008 WL 4838843 at *2 (D. Or. 2008) (upholding $5,000 limitation of liability clause for a storage contract). Custom favors the application of the limitations clause.

Finally, the Court considers the circumstances of the agreement, and Plaintiff's ability to review and understand the agreement. Schroder, 86 Wn.2d at 262. Plaintiff claims that circumstances at the time of the contract signing precluded her from fully reading and understanding the terms of the agreement. (Dkt. No. 24 at 2-3.) However, the rental agreement was renewed monthly and was terminable by either part at any time within 20 days of giving notice. Plaintiff had the ability to review, seek counsel regarding, attempt to renegotiate, or to terminate the agreement at any time over the course of five years but does not claim to have taken any action in these regards. The Court finds the totality of the circumstances supports the enforceability of the limited liability clause.

1    While the normal remedy for Plaintiff's failure to plead the requisite amount in

2    controversy is granting leave to amend, the Court finds amendment would be futile in light of

3    the enforceable limitation of liability clause.  See 14B Wright, Miller, Cooper, Federal

4    Practice & Procedure, Jurisdiction § 3702; see also Eddings, 2008 WL 4838843 at *2

5    (amendment futile in light of limitation of liability clause).  Plaintiff's complaint must be

6    dismissed.

7

8        III.    Motions to Strike and Seal

9    Plaintiff moves to strike certain document attached to the Sievers Declaration.  (Dkt.

10   No. 25 at 2 (moving to strike Exs. CC, FF, HH, II).)  Without taking any position on the

11   merits of Plaintiff's challenge, the Court observes that it reaches its decision based solely on

12   the complaint and the contract between the parties.  Plaintiff's motion to strike is therefore

13   moot.

14   Plaintiff also moves to seal Exhibits B, C, K, and M to the Sievers Declaration and

15   Exhibit A to her own declaration.  (Dkt. No. 25 at 2-3.)  The Court agrees that these

16   documents should be maintained under seal.  The Court grants Plaintiff's motion to seal and

17   directs the Clerk to seal Exhibits B, C, K, and M to the Sievers Declaration.

18

19   **Conclusion**

20   The Court finds that Plaintiff's RICO claim must be dismissed for failure to state a

21   claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Court also finds that

22   the remainder of Plaintiff's contract and CPA claims should be dismissed because the Court

23   lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The Court therefore GRANTS

24   Defendants' motion to dismiss without reaching the merits of the portions of the motion

25   seeking summary judgment.  (Dkt. No. 16.)   Plaintiff's complaint is DISMISSED.

1    The Court FINDS AS MOOT Plaintiff's motion to strike (Dkt. Nos. 25, 38) and

2    GRANTS Plaintiff's motion to seal.  Exhibit A to the Reule Declaration (Dkt. No. 32) shall

3    remain under seal.  The Clerk is directed to place Exhibits B, C, D, K and M of the Sievers

4    declaration under seal.   Defendants are directed to file a redacted version of the Sievers

5    declaration within ten (10) days of this Order.

6

7        The Clerk is directed to send a copy of this order to all counsel of record and mail a

8    copy to Ms. Reule.

9        DATED this 13th day of July, 2009.

10

11

12                                   _____
                                     Marsha J. Pechman
13                                   United States District Judge